IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| U.S. Specialty Insurance Company, § § Plaintiff, § § v. § § Gartner Group, Inc., § § Defendant. § § § | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff U.S. Specialty Insurance Company ("USSIC") files this Complaint for Declaratory Judgment against Defendant Gartner Group, Inc. ("Gartner") and alleges as follows:

**INTRODUCTION**

1. This insurance coverage dispute concerns the parties' rights and obligations under an event cancellation policy, Policy No. U-19/7004347 (the "Policy"),[1] issued by USSIC to Gartner. USSIC has confirmed acceptance of claims that potentially exhaust the Policy's Aggregate Limit of Indemnity of "$150,000,000 in all." Gartner, which represents that it may have suffered losses in excess of this amount due to the COVID-19 global pandemic, takes the position that it has the right to coverage in excess of the Policy's Aggregate Limit of Indemnity. However, the Policy does not entitle Gartner to coverage in excess of the Aggregate Limit of Indemnity.

2. Gartner is a global research and advisory company that, among other activities, organizes and stages events and conferences at numerous locations throughout the world. In February 2020, under the terms of the Policy, Gartner provided USSIC a Schedule of Events

---

[1] The Policy is attached to this Complaint for Declaratory Judgment as Exhibit A.

indicating that the value of all shows scheduled for 2020 exceeds $400 million—well in excess of the Policy's Aggregate Limit of Indemnity.

3. In prior years, Gartner purchased coverage for the full value of all its shows. Beginning in 2005, however, Gartner began purchasing a "first loss" policy from USSIC that covers less than the entire risk to Gartner. Gartner may have judged that the risk of a total loss was extremely unlikely. And for fifteen years, Gartner's judgment proved accurate. Everything changed in 2020 when the COVID-19 global pandemic resulted in the cancellation or postponement of all shows in all locations throughout the world, for an extended period of months.

4. USSIC has honored its obligations under the Policy and accepted claims that could exceed $150 million—the Policy's Aggregate Limit of Indemnity for the 2020 policy year— subject to a full coverage review when Gartner provides further documentation. No provision of the Policy entitles Gartner to increase the Aggregate Limit of Indemnity. Moreover, although the Policy permits Gartner to secure additional coverage (within the Aggregate Limit of Indemnity) in some circumstances, the Policy does not permit Gartner to secure additional coverage where, prior to inception of that coverage, Gartner was aware of circumstances—such as the COVID-19 pandemic—that may lead to a claim. Indeed, permitting Gartner to obtain increased coverage for additional COVID-19 losses would be against public policy and violate the well-established fortuity doctrine.

5. In this action, USSIC seeks a determination that Gartner is not entitled to payment of claims for the 2020 policy year in excess of $150,000,000, the Policy's Aggregate Limit of Indemnity and, alternatively, that Gartner cannot increase limits of indemnity for losses arising from the COVID-19 pandemic.

## THE PARTIES

6. Plaintiff USSIC is a specialty insurance group that issued an event cancellation insurance policy to Gartner. USSIC is incorporated in Texas, and its principal place of business is in Houston, Texas.

7. Defendant Gartner is incorporated in Delaware and its principal place of business is in Stamford, Connecticut. Gartner may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a) and 2201 because USSIC is neither incorporated in nor has its principal place of business in the same state as Gartner, and USSIC seeks a declaratory judgment determining the parties' respective rights and obligations with regards to an amount in controversy exceeding $75,000.

9. Venue is proper under 28 U.S.C. § 1391 because Gartner maintains an office in this district at 11490 Westheimer Road, Suite 240, Houston, Texas 77077.

## FACTUAL ALLEGATIONS

I. **Gartner Obtained Event Cancellation Insurance**

10. Gartner is a global research and advisory company that serves 15,600 client organizations throughout the world. Each year, Gartner organizes multiple events and conferences related to human resources, information technology, legal, marketing, and sales. In 2019, Gartner reported that its conference business segment had a revenue growth of 18% with a conference attendance growth of 8%.

11. Since at least October 2004, USSIC has issued Gartner event cancellation policies to cover these meetings and conferences. The policies have been negotiated through Gartner's insurance broker, first Marsh, and later Aon, which is Gartner's current insurance broker.

12. During the time that Marsh was Gartner's broker, USSIC issued Gartner event cancellation insurance for the full value of its shows. However, when Aon became Gartner's broker, Aon negotiated a loss limit event cancellation policy that insured only a percentage of the Limits of Indemnity for Shows, which resulted in a lower premium charged to Gartner.

13. Near the end of October 2019, Aon began negotiating the terms of the Policy with USSIC. The negotiations continued through December 2019, and USSIC issued the Policy effective December 31, 2019.

14. On February 1, 2020, under the terms of the Policy, Gartner provided USSIC with a Schedule of Events for all Shows that Gartner intended to host through December 31, 2020. On April 7, 2020, USSIC issued Endorsement No. 5 that amended the Schedule of Events by adding two Shows, which were made subject to a coronavirus exclusion. The cumulative Limit of Indemnity for all Shows listed on the 2020 schedule exceeded $400 million—well in excess of the Policy's Aggregate Limit of Indemnity.

II. **The COVID-19 Pandemic Triggered Widespread Cancellations of Events**

15. Due to the COVID-19 pandemic, Gartner already has cancelled or postponed over 50 of the 64 shows scheduled for 2020. USSIC preliminarily has accepted claims for events through August 2020, subject to a full coverage review when the documentation is received, that total as much as $164,743,000 in potential aggregate proceeds. This figure is uncertain because Gartner has not provided USSIC or its adjuster with information that would permit USSIC to assess indemnity, even preliminarily.

16. Gartner's broker, Aon, has identified 45 cancelled events in 2020, totaling $176,119,697 in Limits of Indemnity; 8 postponed events in 2020, totaling $79,652,949 in Limits of Indemnity; and 10 events Gartner presently intends to hold as scheduled in 2020, totaling $172,544,787 in Limits of Indemnity.

### III. The Policy

#### A. Coverage Provision

17. **Insuring Agreement.** Section I of the Policy (Show Cancellation) provides, in relevant part, that "[t]his insurance indemnifies the Insured against any non-excluded loss occurring subsequent to the Effective Date resulting in the … Cancellation, Curtailment, Postponement, Interruption, Relocation/Removal to Alternative Premises, or Abandonment of a Show."

18. The Policy defines all of these covered events to mean "the inability of the Insured to open, keep open, or otherwise maintain the Show in whole or in part for its intent, scope and duration."

19. The Policy identifies the Shows for the 2020 policy period as those set forth in the Schedule of Events provided by Gartner on February 1, 2020.

#### B. Limits

20. The Policy includes the following provisions addressing the Policy limits.

21. **Aggregate Limit of Indemnity**

    a. [2020]: $150,000,000 in all

    b. [2021]: $150,000,000 in all

    $300,000,000 in all.

22.     **Limit of Indemnity.** Defined in the Policy as "Up to but not exceeding the Limit of Indemnity for each Show as stated in Item No. 7 below, *subject to the Aggregate Limit of Indemnity* as stated in Item No. 8." (Emphasis added.) The Schedule of Events, in turn, identifies a Limit of Indemnity per Show.

23.     **Increase in Limits of Indemnity.** Section 9 of the General Conditions and Warranties (Increase in Limits of Indemnity) provides:

> It is understood and agreed that the Aggregate Limit of Indemnity is a loss limit and may not be sufficient to cover the aggregate value of all Shows. At any time prior to commencement of a Show or Shows the Insured can apply in writing for increased indemnity limits based upon revised financial estimates of Gross Revenues, Expenses or Commitments, provided that there is no circumstance(s) known by the insured which may give rise to a claim with respect to such Show or Shows declared to this insurance. Insured as used herein means the Risk Manager, CEO, CFO, or General Counsel of the Named Insured. It is understood and agreed that if Gross Revenues, Expenses or Commitments for any one, several or all Shows as per Item 7 of the Declarations increases in value by a factor of 10% or less, there will be no change in premium and the Limit of Indemnity for any one, several or all Shows as per Item 7 of the Declarations automatically increase accordingly.

24.     **Reinstatement of Limits.** Section 12 of the General Conditions and Warranties (Reinstatement of Original Limit of Liability) provides:

> This insurance is extended to cover a Show if it is Cancelled, Abandoned, Postponed, Interrupted, Curtailed or Relocated. The Company agrees to reinstate that part of the Limit of Indemnity shown in the Schedule utilized by way of any potential or actual loss payment under this insurance at the sole option of the Insured. If the Insured opts to reinstate the Limit of Indemnity then the additional premium payable is calculated at 100% of the original premium multiplied by that portion of the Limit of Indemnity reinstated. Furthermore, if the Limit of Indemnity reinstated exceeds the ultimate settled loss then the Company agrees to a return premium for the difference calculated in accordance with the foregoing. The maximum amount that can be reinstated shall not exceed $150,000,000.

C.  **Calculation of Loss**

25.     The Policy section entitled "Calculation of Loss – Gross Revenue" provides that Losses covered under Section I (Show Cancellation) shall be determined as "the greater of":

      i.    the loss of Gross Revenue that would have been received in the absence of the covered loss, whether or not the insured is obligated by contract or otherwise to return such Gross Revenue, plus the insured's loss from Commitments, less recoveries made and any necessary Expenses not incurred. Pro-rata return of any part of Gross Revenue in connection with a Show shall be considered as loss of Gross Revenue; or

      ii.    the total of Expenses incurred plus loss of Commitments, less any recoveries obtained, and less Gross Revenue retained after refunds, whether or not the insured is obligated by contract or otherwise to return such Gross Revenue; and

      iii.    with respect to (i) and (ii) above the reasonable cost incurred, agreed, or committed by the Insured to avoid, diminish, or mitigate the extent, scope or possibility of a loss including costs to reschedule and or remarket a Show. Such costs include but are not limited to:  extra expense, transportation, accommodation, Commitments, incentives, advertising, promotion, marketing and public relations Expenses. The cost of such action is in addition to the limit of liability.

### D. Exclusions

26. The Policy provides that "this insurance does not cover loss arising directly as a result of," among other things:

> Circumstances existing prior to the inception of this insurance known by the Insured that could result in a loss unless the Insured had advised [USSIC] of such circumstance and the Company accepted the risk by endorsement attached hereto and that any additional premium required has been paid by the Insured. For the purposes of this exclusion, insured means the Risk Manager, CEO, CFO or General Counsel of the Named Insured.

## IV. Gartner Requests Reinstatement

27. On May 12, 2020, Gartner submitted a request for reinstatement of the Limits of Indemnity under the Policy. Gartner has asserted that it is entitled to reinstate limits of indemnity with respect to cancelled or postponed Shows, and to use those limits for claims on separate and unrelated Shows, consequently increasing coverage for 2020 such that it would exceed the Policy's Aggregate Limit of Indemnity for 2020 losses.

## CAUSES OF ACTION

28. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

29. USSIC and Gartner are interested parties under the Policy. An actual case or controversy exists between the parties whether, under the circumstances set forth above, Gartner is entitled to reinstate coverage under the terms, conditions, and exclusions of the Policy, and if it is, how much coverage Gartner is entitled to reinstate.

30. Accordingly, pursuant to 28 U.S.C. § 2201, *et seq.*, USSIC respectfully requests that this Court issue the following judicial declarations to terminate the uncertainty or controversy giving rise to this proceeding.

## COUNT I

------

### LIABILITY UNDER THE POLICY FOR 2020 LOSSES MAY NOT EXCEED THE AGGREGATE LIMIT OF INDEMNITY OF $150,000,000 IN ALL

1. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

2. Item 8 of the Declarations states that the Aggregate Limit of Indemnity for each period of coverage is $150,000,000 "in all." Although certain provisions in the Policy address reinstating or increasing limits for an individual Show or for multiple Shows, no provision permits Gartner to increase the Aggregate Limit of Indemnity. Instead, the Policy sets $150,000,000 as a hard cap, as indicated by the words "in all."

3. Accordingly, the most USSIC could ever be required to pay for losses in each coverage period is $150,000,000. Nothing short of a retroactive endorsement amending Item 8 can alter the Aggregate Limit of Liability.

4. USSIC is entitled to a declaration that Condition 12 of the Policy only permits reinstatement of Policy Limits of Indemnity up to the Aggregate Limit of Indemnity for each period of coverage, and no more than $150,000,000 in all.

5. There is no adequate remedy, other than that requested herein, by which the controversy may be resolved.

6. The Policy provides for reinstatement of "that part of the Limit of Indemnity shown in the Schedule [of Events] utilized by way of any potential or actual Loss payment[.]"

7. No loss payment has occurred, and Gartner has not provided preliminary claim information necessary to evaluate the potential amount of each claim.

8. Accordingly, Condition 12 of the Policy (Reinstatement of Original Limit of Liability) has not triggered and Gartner's request for reinstatement is premature.

9. In any event, Condition 12 of the Policy allows Gartner only to reinstate that part of the Limit of Indemnity for a specific Show, that has been eroded by a potential or actual loss payment for the Show. For instance, if Gartner must cancel a show and reschedule it for a later date, incurring some loss for which it has or will receive a loss payment, Condition 12 permits Gartner to reinstate the portion of the limit that potentially or actually has been eroded.

10. USSIC is entitled to a declaration that Condition 12 of the Policy only authorizes Gartner to reinstate that part of the original Limit of Indemnity of a Show, as shown in the Schedule of Events, eroded by way of potential or actual loss payment.

11. There is no adequate remedy, other than that requested herein, by which the controversy may be resolved.

## COUNT II
------
### GARTNER CANNOT INCREASE LIMITS OF INDEMNITY FOR LOSSES ARISING FROM THE COVID-19 PANDEMIC

12. USSIC reasserts and incorporates by reference the preceding paragraphs as if fully set forth herein.

13. The known loss rule is a principle of insurance which states that coverage may not be obtained for a loss that has already occurred or is certain to occur and/or that is known to the person seeking to obtain the coverage.

14. The fortuity doctrine similarly holds that insurance is not available for losses that the policyholder knows of, planned, intended, or is aware are substantially certain to occur.

15. The Policy contemplates that Gartner cannot increase Limits of Liability for a loss that already has occurred or is in progress. For instance, Condition 9 provides that:

> At any time prior to commencement of a Show or Shows the Insured can apply in writing for increased indemnity limits … provided that there is no circumstance(s) known by the insured which may give rise to a claim with respect to such Show or Shows declared to this insurance. Insured as used herein means the Risk Manager, CEO, CFO or General Counsel of the Named Insured.

16. This provision makes clear that USSIC did not intend the Policy to permit an increase in Limits of Indemnity to cover additional claims arising from a circumstance already known to the insured at the time the insured requests an increase. Gartner recognized this principle when it agreed to a coronavirus exclusion for the two Shows it added to the Schedule of Events in April 2020.

17. Permitting Gartner to obtain increased coverage for a loss in progress would be contrary to public policy and the fortuity doctrine, which does not permit an insured to purchase or benefit from an insurance policy if the insured knew or expected a loss to occur.

18. Even if Paragraph 12 of the General Conditions and Warranties could be read to entitle Gartner to reinstate and thereby somehow increase the Aggregate Limit of Liability of $150,000,000—which it cannot—Condition 12 is nevertheless subject to Exclusion 2(b), which excludes any loss resulting from

> [c]ircumstances existing prior to the inception of this insurance known by the Insured that could result in a loss unless the Insured had advised the Company of such circumstances and the Company accepted the risk by endorsement attached hereto and that any additional premium required has been paid by the Insured. For the purposes of this exclusion, insured means the Risk Manager, CEO, CFO or General Counsel of the Named Insured.

19. As coverage under the requested reinstatement has not incepted, and the COVID-19 pandemic is well known to Gartner, reinstatement is not available under Condition 12 to cover cancellations due to the pandemic.

20. USSIC is entitled to a declaration that Gartner cannot increase Limits of Indemnity for losses arising from the COVID-19 pandemic.

21. There is no adequate remedy, other than that requested herein, by which the controversy may be resolved.

## **PRAYER**

WHEREFORE, USSIC respectfully requests that the Court enter a judgment:

a) declaring that reinstatement of Policy Limits of Indemnity cannot exceed the Aggregate Limit of Indemnity for each period of coverage;

b) declaring that Gartner cannot increase limits of indemnity for losses arising from the COVID-19 pandemic;

c) awarding USSIC its attorneys' fees and costs to the extent allowed by law; and

d) awarding all other and further relief as the Court deems just and proper.

Dated:   May 27, 2020 　　　　　　　　　　　Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

*s/ Gerard G. Pecht*

Gerard G. Pecht
gerard.pecht@nortonrosefulbright.com
Sumera Khan
sumera.khan@nortonrosefulbright.com
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone:     (713) 651-5151
Facsimile:      (713) 651-5246

Daniel McNeel Lane, Jr.
neel.lane@nortonrosefulbright.com
300 Convent Street, Suite 2200
San Antonio, Texas 78205
Telephone:     (210) 224-5575

*Attorneys for Plaintiff USSIC*